Leo L. KELLY, John and Emma Byrd, Ira Lee and Ophelia Harper, Walter M. and Katie M. Byrd, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

George W. ROMNEY, Secretary of the United States Department of Housing and Urban Development, Frances D. Fisher, Regional Administrator, Region IV Renewal Section, U. S. Department of Housing and Urban Development, Dave Hall, as Mayor and in his representative capacity as City Commissioner of the City of Dayton, Ohio, Graham W. Watt, City Manager of the City of Dayton, Ohio, Dayton View Neighborhood Council, Robert A. Flynn, Director, Plan Board, City of Dayton, Ohio, Jackson J. Perry, Director of Welfare, City of Dayton, Ohio, Joseph D. Wine, Dayton View Stabilization Director, City of Dayton, Ohio, King Wrecking Company, and City of Dayton, Ohio, a Municipal Corporation, Defendants.

Civ. A. No. 3691.

United States District Court,
S. D. Ohio, W. D.
Feb. 25, 1970.

James Rice, Dayton, Ohio, William Davis, Columbus, Ohio, for plaintiffs.

Robert Steinberg, Asst. U. S. Atty., Dayton, Ohio, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW JUDGMENT

WEINMAN, Chief Judge.

In this action plaintiffs seek injunctive relief restraining the City of Dayton from demolishing and purchasing more property for an "open-space" park project encompassing thirty-two separate parcels of land which is funded in part by the United States Department of Housing and Urban Development (hereinafter sometimes referred to as H.U.D.). At the present time the City of Dayton has purchased nineteen of the thirty-two separate parcels located in the proposed park site. The plaintiffs are Negro owners of property in the proposed park site which has not as yet been acquired by the City. The named defendants are George W. Romney, Secretary of the United States Department of Housing and Urban Development, Frances D. Fisher, Regional Administrator, for H.U.D. (hereinafter referred to as the federal defendants), Dave Hall, Mayor of the City of Dayton, Graham W. Watt, City Manager of the City of Dayton, Dayton View Neighborhood Council, Robert A. Flynn, Director of the City of Dayton Plan Board, Jackson J. Perry, Director of the Department of Welfare of the City of Dayton, Joseph D. Wine, Dayton View Stabilization Director, King Wrecking Company and the City of Dayton, Ohio (hereinafter referred to as the local defendants). In their complaint plaintiffs on behalf of themselves and others similarly situated allege five claims:

1. That the local defendants by appropriating property in the park site with knowledge that there is private housing discrimination against Negroes have deprived plaintiffs and their class of equal protection of law guaranteed by the Fourteenth Amendment.

2. That the local defendants have failed to provide a feasible plan for relocating individuals displaced by the project as required by Section 1455(c), Title 42 United States Code.

3. That the federal defendants have violated federal guidelines implementing Sections 1441–1460 and Section 3534, Title 42 United States Code.

4. That the local defendants conspired to interfere with plaintiffs' civil rights in violation of Section 1985(3) of Title 42 United States Code.

5. That the failure of the local defendants to include church property in the park project establishes a religion in violation of the First Amendment.

Plaintiffs pray that the defendants be permanently enjoined from:

1. authorizing the purchase of more properties in the Park site.

2. purchase and acquisition of more properties in the proposed Park site.

3. further authorization of funds for demolition of properties in the proposed Park site.

4. the demolition of properties in the proposed Park site.

That this Court issue a permanent mandatory injunction requiring the defendants to comply with the provisions of 42 U.S.C., Section 1455(c).

This action was tried on the merits before the Court without a jury and the Court having considered the pleadings, the evidence and having observed the behavior of the witnesses on the stand, their manner of testifying and the probability of their testimony, makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The City of Dayton developed a Dayton View Park plan for an "open-space" land project encompassing an area bounded by Ferguson Avenue on the West, Broadway Street on the East, Superior Avenue on the North and Edgewood Avenue extending on the South including thirty-two separate parcels of land. The parcels to be purchased by the City are owned by both Whites and Negroes.

2. The church located on the Southeast corner of Superior Avenue and Ferguson Avenue is not and never was included in the plan for the park development.

3. After hearing objections from interested citizens, the City Commission for the City of Dayton, Ohio approved the park plan.

4. The plaintiffs are Negro owners of property in the park area which is scheduled for appropriation under the project. None of the parcels owned by plaintiffs have been acquired by the City of Dayton. At the time of the filing of this action the City of Dayton had acquired nineteen of the thirty-two parcels and had let a contract to defendant King Wrecking Company for the demolition of nine structures located on nine separate parcels and two structures have been demolished.

5. The City of Dayton made an application for a federal grant from the United States Department of Housing and Urban Development (H.U.D.) under the provisions of the Housing Act of 1961 as amended, 42 U.S.C. § 1500 et seq. to help finance the "open-space" land project.

6. The application of the City of Dayton was approved by H.U.D. and on June 5, 1968 the City of Dayton and H.U.D. entered into a contract providing for a federal "open-space" land grant of 50% of the cost of the project or $284,-382.00 whichever is less and a relocation grant of $38,000.00.

7. Under the contract the City of Dayton is to acquire a fee simple interest in the land described in the park plan, demolish existing structures, clear the site, and retain the site, as developed, for permanent open-space purposes, namely for park and recreational purposes, conservation of land and other natural resources or historic or scenic purposes.

8. The Department of Community Development of the City of Dayton maintains a Relocation Office which offers relocation assistance to persons who are displaced by the park project. The Relocation Office employs Mr. Dave Altick as relocation supervisor and three relocation counselors.

9. The Relocation Office operated by the City offers assistance to displacees in finding safe, sanitary and decent housing and processes and pays claims for moving expenses, rent supplement and replacement housing payments.

10. With respect to relocation the relocation counselors, at the beginning of a project, take a survey of the project by interviewing the residents to learn about their relocation needs and where the residents desire to relocate. The residents are also informed of their right to receive moving expenses, rent supplements and replacement housing payments.

11. If upon the initial survey a resident indicates that he desires to utilize the City's relocation service, the counselors assist the displacee in finding safe, sanitary and decent housing or gets them public housing.

12. If a resident does not desire to move immediately the relocation counselors conduct a second interview after the property has been acquired to determine whether the resident's relocation needs have changed. Upon request of the resident for relocation assistance, the counselors assist the resident in finding safe, sanitary and decent housing.

13. In order to keep informed as to the available housing in the Dayton area, the relocation office maintains a file of sales and housing within the City of Dayton which includes the Multiple Listing Bureau from Real Estate Boards and a list of V.A. and F.H.A. acquired property for sale.

14. The relocation counselors attempt to relocate displaced residents into an area desired by the residents but do not encourage displacees to locate in a particular area. The relocation counselors have no power to compel a displacee to relocate in a particular area.

15. The relocation counselors have testified in this case that they have been able to find safe, sanitary and decent housing for persons displaced by the park project and other projects who request relocation assistance.

16. In addition to relocation assistance, the City's Relocation Office processes and pays claims for moving expenses, rent supplements (a payment to elderly individuals or families up to a maximum of $500.00 a year who are unable to relocate in public housing), and replacement housing payments (a supplement to homeowners up to $5,000.00 to compensate the owner for the difference between the price paid by the City for his home and the price of a replacement home that would satisfy the displacee's needs).

17. In a statement issued on April 19, 1968 H.U.D. indicated that it was the policy of the department to encourage the utilization of the relocation process as a means for expanding the housing choices available to minority-group families and individuals. The Relocation Office for the City of Dayton instructs its counselors to inform displacees that they have a right to purchase a home where they desire to reside and that the Relocation Office will help them enforce that right. In order to fulfill the H.U.D. policy of equal opportunity in housing the Relocation Office has obtained the assistance of the Human Relations Council of the City of Dayton, a local agency which investigates complaints of housing discrimination and works for the solution of such complaints.

18. None of the plaintiffs to this action have sought relocation assistance from the City of Dayton. Plaintiff Kelly has refused to permit city officials to inspect his property for appraisal purposes.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of this

action. 28 U.S.C. Section 1343(3) and (4).

2. Regarding this Court's jurisdiction under Section 1343(3), Title 28 U.S.C. to "redress the deprivation under color of any state law * * * of any right, privilege or immunity secured by the Constitution," it should be noted that the Court of Appeals for the Second Circuit in the recent case of Eisen v. Eastman, 421 F.2d 560, has held that Section 1343(3) applies only when the right or immunity is one of personal liberty not dependent upon its existence upon infringement of property rights.

3. Section 2000d of Title 42 United States Code provides:

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

■ Plaintiffs allege that the defendant Dayton View Neighborhood Council commenced action to develop a plan to remove black citizens from the Dayton View area by creating "open-space" as a buffer zone to the movement of plaintiffs and others of their class into upper Dayton View; that the defendant neighborhood counsel negotiated with defendants Flynn and Perry and as a result defendant Flynn presented the park plan to the Dayton City Commissioners who approved said plan.

In the case of Nashville I–40 Steering Committee v. Ellington, 387 F.2d 179 at pages 184–185 (C.A. 6, 1967), cert. denied 390 U.S. 921, 88 S.Ct. 857, 19 L.Ed.2d 982 (1968) involving a contention of racial discrimination in the selection of a highway route, the Court of Appeals for the Sixth Circuit held:

"Appellants contend that, regardless of intent, the result of the construction of the proposed highway would be so injurious to the residents and institutions of the area as to deprive appellants and those whom they represent of due process and equal protec-

tion as a matter of law. We do not agree with this contention. In the absence of proof of racial discrimination, we do not consider this matter to be a justiciable issue. The routing of highways is the prerogative of the executive department of government not the judiciary."

■ In the present case the record is devoid of evidence that the park location was selected in order to discriminate against plaintiffs and their class. Absent proof of a discriminatory purpose, the location of the park is a prerogative of the Municipal Officials of the City of Dayton.

4. The plaintiffs contend that the conduct of the local defendants in locating the park in an area where black citizens reside, with knowledge that the displaced black citizens will have to seek housing in the private discriminatory housing market denies plaintiffs equal housing opportunities and constitutes state action in violation of the equal protection clause of the Fourteenth Amendment.

In Green Street Association v. Daley, 373 F.2d 1, at page 9 (C.A. 7, 1967) cert. denied 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967) the Court of Appeals for the Seventh Circuit affirmed a judgment dismissing a complaint raising a similar contention stating:

"The complaint alleges, in various terms, that the relocation facilities proposed in the Urban Renewal Plan 'recognize' or 'acknowledge' the segregated residential pattern existing in Chicago. It does not, and realistically cannot, allege that the relocation machinery established by the Plan forces or compels displacees from the Project to relocate in segregated areas of the city. The existing 'segregated' residential pattern is accidental to the Plan. The City admittedly could not require relocation in any particular area; it may only determine what housing is available in fact and offer whatever assistance it can in furnishing this information to displacees. *The local defendants may not be en-*

*joined from proceeding with the Plan simply because the Plan fails to include what the local defendants would be powerless to enforce—'integrated' relocation.* (Emphasis added)."

Plaintiffs rely on the case of Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920 (C.A. 2, 1968) in which the Court of Appeals for the Second Circuit held that a complaint alleging that the defendants in planning and implementing an urban renewal project "did not assure, or even attempt to assure, relocation of Negro and Puerto Rican displacees in compliance with the contract to the same extent as they did for whites; indeed, they intended through the combination of the Project and the rampant discrimination in rentals in the Norwalk housing market to drive any Negroes and Puerto Ricans out of the City of Norwalk" stated a claim for a violation of the equal protection clause.

Norwalk Core v. Norwalk Redevelopment Agency *supra,* teaches that Negroes displaced by an urban renewal project can prove a violation of the equal protection clause by showing that private housing discrimination prevents local defendants from finding available relocation housing for displacees so that the relocation standard of decent, safe and sanitary dwellings is met less adequately for non-whites than for whites. The case does not hold that local defendants must end discrimination in the open housing market or find integrated housing for displacees.

In the present case plaintiffs have failed to establish that the relocation program and procedures adopted by the local defendants do not assure or attempt to assure relocation of Negroes into safe, sanitary, decent housing to the same extent as Whites. The evidence before the Court does not show that the city's relocation counselors discriminate against Negroes in offering relocation services or that any private housing discrimination in Dayton, Ohio creates a lack of sufficient relocation housing to accommodate Negroes displaced by the park project.

The Court concludes that the evidence fails to establish that plaintiffs or their class are being subjected to discrimination under the federally assisted park project.

■ Persons displaced by the park project who may encounter housing discrimination are not without a remedy. They can seek relief through the Ohio Civil Rights Commission and in state courts under the Ohio Fair Housing Law. Redress of private housing discrimination can be sought in the federal courts under Section 1982, Title 42 U.S. C. as construed by the Supreme Court in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) and under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–3631. Injunctive relief restraining completion of the park project is not an appropriate remedy to redress private housing discrimination.

■ 5. In addition to their constitutional claims, plaintiffs contend that the local defendants have failed to provide a feasible method for the relocation of individuals displaced by the park project in violation of Section 1455(c) (1) of Title 42 U.S.C. which in part provides:

"There shall be a feasible method for the temporary relocation of individuals and families displaced from the urban renewal area, and there are being provided, in the urban renewal area or in other areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the individuals and families displaced from the urban renewal area, decent, safe, and sanitary dwellings equal in number to the number of and available to such displaced individuals and families and reasonably accessible to their places of employment. * * * "

The Court upon due consideration of the evidence with respect to the relocation program and procedures adopted by the local defendants concludes that the local defendants have substantially com-

plied with the requirements of Section 1455(c) Title 42 U.S.C. See Findings of Fact numbers 8, 9, 10, 11, 12, 13, 14, 15 and 16.

█ 6. At the trial of this action plaintiffs did not present evidence in support of their third claim that the federal defendants violated federal guidelines implementing sections 1441–1460 and 3534 of Title 42 U.S.C. At the close of the evidence, counsel for plaintiffs was granted leave to take the deposition of H.U.D. officials in Chicago and make the deposition part of the record of this case. No deposition has been filed with the Court. Plaintiffs' third claim against the federal defendants must fail for lack of proof.

█ 7. Plaintiffs have failed to prove the existence of a conspiracy to deprive plaintiffs and their class of equal protection under the Fourteenth Amendment.

█ 8. Plaintiffs' fifth claim which charges that the exclusion of a church from the park area constitutes an establishment of religion in violation of the First and Fourteenth Amendments of the United States Constitution does not raise a substantial federal question. The selection of the location of the park is a prerogative of the municipal officials of the City of Dayton. Failure of the city officials to include the church property within the park area does not advance religion in violation of the First Amendment.

█ 9. After the City of Dayton had purchased nineteen of the thirty-two parcels in the park site, the plaintiffs brought this action seeking injunctive relief restraining the local defendants from demolishing or purchasing more property in the park area. The relief requested would cause irreparable injury to the public interest by effectively terminating the park project after over one-half of the parcels in the area had been purchased. The failure of plaintiffs to challenge the project prior to the purchase of the parcels has materially prejudiced the defendants. Under these circumstances, the Court concludes that the plaintiffs are not entitled to extraordinary equitable relief and that the relief requested is barred by laches.

10. Plaintiffs are not entitled to injunctive relief requiring compliance with 42 U.S.C. § 1455(c).

## JUDGMENT

Accordingly, it is hereby ordered, adjudged and decreed that judgment be and it hereby is rendered in favor of the defendants and against the plaintiffs. The application for a permanent injunction is hereby denied. Plaintiffs' complaint is hereby dismissed. Costs shall be taxed against the plaintiffs.