Erwin STOESSEL and Barbara Stoessel, Plaintiffs,

v.

PARKSIDE DEVELOPMENT CO., INC., Defendant.

No. 72 Civ. 1350.

United States District Court, S. D. New York.

April 17, 1973.

Alexander A. Kolben, New York City, for plaintiffs.

Friedman & Krauss, New York City, for defendant by Allen Ducker, New York City, of counsel.

DUFFY, District Judge.

This is an action under 42 U.S.C. § 1982 and § 3604. The basic complaint is that the defendant Parkside Development Co., a housing cooperative in the Bronx, refused to negotiate with plaintiffs Erwin and Barbara Stoessel for the purchase of a cooperative apartment since they were Negroes. The plaintiffs demand "an injunction . . . permanently restraining and enjoining the defendant from refusing to negotiate for and sell a two (2) bedroom apartment to the plaintiffs and for an order setting forth a system whereby all applications for apartments in defendant's premises are processed by the defendant in an orderly manner whereby the applicants, particularly the plaintiffs, are advised of their standing on any waiting list . . . ."

The plaintiffs also seek actual damages of $2,000, $2,000 punitive damages, and reasonable attorney's fees and costs.

Plaintiffs testified that they visited the apartment development on February 17, 1971, looking for an apartment. They found no listing of the managing agent and were told by some unidentified woman that the tenants owned the building. Shortly thereafter, the plaintiffs were contacted by a Mr. Garcia, who was until recently the superintendent of the building. Mr. Garcia invited plaintiffs to his apartment and showed them a check stub which said that the A & S Management Corp. (hereinafter "A & S") was the manager of the building. Plaintiff Irwin Stoessel telephoned A & S and was told to send them a self-addressed envelope and he would be sent an application.

On or about March 22, 1971, A & S sent three applications to the plaintiffs and they were filled out and returned to the managing agent. The plaintiffs claim that the delay in receiving the application was evidence of the defendant's discrimination. This delay apparently was not caused by any racial motivations but by a clerical dislocation caused when A & S during this period absorbed the previous management company. In any event, it does not appear that any other applicants were placed on the waiting list during this period.

Before receiving the application, the plaintiff, Irwin Stoessel, testified as a witness at a hearing before the New York State Division of Human Rights on March 17, 1971, involving discrimination charges brought by Mr. Garcia. Mr. Garcia had been notified in December 1970 that he was to be discharged and filed a charge of discrimination against the defendant Parkside and the agent, A & S Management Corp.

Mr. Garcia claimed both at the hearing before the State Division of Human Rights and also at the trial, that he was being discharged because he was aiding blacks in obtaining applications. He testified that the individual manager of

the building had told him to stop helping "niggers" and that he should not give applications to blacks.

After the receipt by A & S of the application form, the plaintiffs were placed at the bottom of the third priority waiting list for two bedroom apartments. Parkside had three categories of priority: the first, for those tenants already residing in the building; second, for returning Vietnam veterans; and third, for all other non-residents of the project.

When the plaintiffs did not immediately receive an apartment at the defendant's development, they filed a complaint against the board of directors of the defendant corporation and A & S. Apparently, the plaintiffs did not know that their name had been added to the waiting list for two-bedroom apartments, priority three, on March 26, 1971, and that they were thirty-third on the list. The State Division of Human Rights conducted an inquiry into the plaintiffs' charges and dismissed the complaint on July 13, 1971.

On July 16, 1971, the plaintiffs appealed that determination. The State Human Rights Appeal Board affirmed the order dismissing the complaint on April 14, 1972, and the plaintiff was notified that he could bring a proceeding in the Appellate Division of the Supreme Court of the State of New York within 30 days from the date of the order. The plaintiff did not appeal that decision. Prior to the plaintiff's receipt of the decision of the State Human Rights Appeal Board, the plaintiffs initiated this action.

On March 1, 1973, the plaintiffs' name on the waiting list had risen to the top spot; they were offered and sold an apartment, and moved in on March 15, 1973. Three waiting lists were introduced as exhibits by the defendants which showed the plaintiffs' name moving up on the waiting list until sometime in late 1972, when plaintiffs were the fourth name on the "priority three" waiting list.

Parkside denied the allegations of discrimination and alleged three affirmative defenses:

First, that the action was barred by the Statute of Limitations, 42 U.S.C. § 3612;

Second, that the determination of the State Division of Human Rights affirmed by the State Human Rights Appeal Board was res judicata; and

Third, that the action was mooted by the fact that an apartment had been offered to the plaintiffs which they accepted and in which they presently reside in the defendant's project.

I find it unnecessary to discuss the affirmative defenses raised by defendant for plaintiff has failed to prove his case under either 42 U.S.C. § 3612 or 42 U.S.C. § 1982. See: Kelly v. Romney, 316 F.Supp. 840 (S.D.Ohio 1970); and Brown v. LoDuca, 307 F.Supp. 102 (E.D. Wis.1969).

The only real evidence produced at the trial that there may have been any discrimination by the defendant in handling the plaintiffs' application, was the testimony of Victor Garcia, the former superintendent of defendant's building, that the defendant's managing agent had made some remark castigating him for giving applications to "niggers". The testimony of Victor Garcia was specifically denied by several defense witnesses. I find the testimony of Garcia was beyond the pale of credibility. He appeared a man motivated by bitterness in his allegedly poor treatment by defendant, and in no sense was he a disinterested objective witness. Apparently he sought by his testimony to obtain a feeling of satisfaction in revenge for his ultimate dismissal. Further, Mr. Garcia's testimony was refuted by other evidence introduced. At the time that Mr. Garcia was allegedly told to discriminate against Negroes, there were already two Negroes who had apartments in the building. There is nothing in this record to disturb the finding of the State Human Rights Appeal Board that the plaintiffs "applied for, received and filed an ap-

plication for the purchase of an apartment in a cooperative apartment house operating pursuant to the Mitchell Lama Law. The record . . . shows that [they were] on a waiting list as a prospective purchaser and that nothing has been done by the respondents to unfavorably affect [the plaintiffs'] position on that list." The waiting lists in evidence show that plaintiffs moved up the list in an orderly manner based merely on the date of application. Plaintiffs introduced no evidence that more recent applicants were moved ahead of them.

Accordingly, I find that judgment must be entered for the defendant.

Settle order on notice.