**N. T. GREENE, et al.,
Plaintiffs-Appellants,**

v.

**CITY OF MEMPHIS, a Municipal Corporation, et al., Defendants-Appellees.**

No. 75–1339.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 13, 1976.

Decided May 13, 1976.

Raymond P. Gibbs, Murfreesboro, Tenn., for plaintiffs-appellants.

Joseph B. Dailey, Asst. City Atty., Charles V. Holmes, Memphis, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Plaintiffs Greene, Goldberger, Taylor, Wilshire Park Civic Club, and Shankman Hill Civic Club charged in their district court complaint that defendants-appellees City of Memphis, its Mayor, its Council, and its Council Chairman unlawfully closed West Drive to through traffic and unlawfully deleted from the municipal budget a joint-funded $750,000 community center. By amended complaint, Greene charged that City had since 1970 located seven community centers on racial bases and closed West Drive on racial bases. The district court granted appellees' motion to dismiss, for failure to state a claim, Fed.R.Civ.P. 12(b)(6),[1] the West Drive and budget deletion claims, and Greene "petition[ed] for [an] interlocutory appeal." Prior to the district court's certifying such petition, the district court proceeded to a non-jury trial of the community center location claim, which was dismissed with prejudice at the conclusion of Greene's proof. Greene thereafter filed a notice of appeal.

---

1. Although appellees moved to dismiss also for lack of jurisdiction over the subject matter, Fed.R.Civ.P. 12(b)(1), and although the district court simply granted appellees' "motion to dismiss," subject matter jurisdiction under 28 U.S.C. § 1343(3) would have attached if a 42 U.S.C. § 1983 claim were stated. *Amen v. City of Dearborn,* 532 F.2d 554, 558–559 (6th Cir. 1976); *Hanna v. Drobnick,* 514 F.2d 393, 397 (6th Cir. 1975). Likewise, if Greene had stated a 42 U.S.C. § 1982 claim, there was subject matter jurisdiction under 28 U.S.C. § 1343(4). *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 412 n. 1, 88 S.Ct. 2186, 2189 n. 1, 20 L.Ed.2d 1189, 1192 n. 1; *Jennings v. Patterson,* 460 F.2d 1021, 1022 (5th Cir. 1972); *Young v. AAA Realty Co.,* 350 F.Supp. 1382, 1387 (M.D.N.C.1972). It fol-

On appeal, Greene [2] claims that the district court erred in granting the motion to dismiss. We agree. Axiomatically,

"a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974), quoting *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957).

*Scheuer* emphasized that

"[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." 416 U.S. at 236, 94 S.Ct. at 1686, 40 L.Ed.2d at 96.

Accord, *Dunlap v. State of Tennessee,* 514 F.2d 130, 133 (6th Cir. 1975).

■ We view Greene as having stated claims under 42 U.S.C. § 1982 and 42 U.S.C. § 1983. Section 1982 confers on "[a]ll citizens . . . the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." The complaint and amended complaint, construed favorably to the pleader, *Timson v. Wright,* 532 F.2d 552, 553 (6th Cir., filed March 23, 1976), citing *Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686, 40 L.Ed.2d at 96, reasonably aver that the closing confers certain benefits, *to wit,* the privacy and quiet of an exclusive dead-end street, on white residents of West Drive that the City has refused to confer on similarly situated black neighborhoods. So construed, those blacks allegedly denied such dead-end streets because of their race "hold" their "real property," on a less equal basis, than similarly situated whites who "hold" their "real property" subject to having the city confer the dead-end street benefit on their property. Though we have found no section 1982 case on-point, the liberal construction that courts have afforded section 1982 buttresses our conclusion that Greene has stated a section 1982 claim. See, e. g., *Tillman v. Wheaton-Haven Recreation Ass'n,* 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973); *Olzman v. Lake Hills Swim Club, Inc.,* 495 F.2d 1333 (2d Cir. 1974); *Jennings v. Patterson,* 460 F.2d 1021 (5th Cir. 1972), 488 F.2d 436, 442 (5th Cir. 1974); *Battle v. Dayton-Hudson Corp.,* 399 F.Supp. 900, 905 (D.Minn.1975).

■ That Greene failed to specifically allege a section 1983 [3] claim cannot preclude him from recovering on a section 1983 claim, should the allegations show and the proof support such a claim. See, e. g., *Janke Const. Co. v. Vulcan Materials Co.,* 527 F.2d 772, 776–77 (7th Cir. 1976), *aff'g* 386 F.Supp. 687, 692 n. 3 (W.D.Wis.1974); *Ailshire v. Darnell,* 508 F.2d 526, 528 (8th Cir. 1974); *Parr v. Great Lakes Express Co.,* 484 F.2d 767, 773 (7th Cir. 1973); *United States v. Martin,* 267 F.2d 764, 771 (10th Cir. 1958); *Dotschay v. National Mut. Ins. Co.,* 246 F.2d 221, 223 (5th Cir. 1957). We

---

lows that the district court dismissal was for failure to state a claim, Fed.R.Civ.P. 12(b)(6).

2. Although the court of appeals docket sheet styles Greene, Goldberger, Taylor, Wilshire Park Civic Club and Shankman Hill Civic Club as plaintiffs-appellants, "[p]laintiff, N. T. Greene," through his attorney, filed the petition for interlocutory appeal and notice of appeal. Similarly, the appellate brief refers to "appellant." The use of the singular apparently is significant in light of a letter in the record indicating the decision of a "Committee to Re-open West Drive" to "separate" its "petition" from Greene's "petition." Because the complaint prays for equitable relief ordering the city officials to keep West Drive open, rather than for damages, whether there is one, or

more than one, appellant is for present purposes insignificant. See *Craft v. Memphis Light, Gas & Water Division,* 534 F.2d 684, 685–687 (6th Cir., filed April 12, 1976).

3. Neither the complaint nor amended complaint mentions section 1983, but both allege jurisdiction through 28 U.S.C. § 1343(3), the jurisdictional counterpart of section 1983. The amended complaint also generally tracks the language of section 1983 in alleging that

"[d]efendant's actions deprived plaintiff and others of their property rights without due process of law and equal protection of the law as protected by the Fourteenth Amendment. . . ."

view Greene as having stated section 1983 claims against the Mayor and Council Chairman, those "person[s]" clearly acting "under color of . . . ordinance" and allegedly denying Greene constitutionally-guaranteed equal protection of the laws by purportedly conferring certain benefits on "white" streets, but not on "black" streets, because of the color of the residents of the streets.

Of course, no section 1983 claim is stated against the City of Memphis or its Council. See *Amen v. City of Dearborn,* 532 F.2d 554, 558–559 (6th Cir. 1976).

The district court, in dismissing, relied too heavily on *Palmer v. Thompson,* 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971), aff'g 419 F.2d 1222 (5th Cir. 1969) (*en banc*), which sustained closing of municipal swimming pools against equal protection challenges because the closings prevented whites and blacks equally from utilizing municipal swimming pools. Accord, *Mahaley v. Cuyahoga Metropolitan Housing Auth.,* 500 F.2d 1087, 1092–93 (6th Cir. 1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 781, 42 L.Ed.2d 805 (1975). Similarly, the closing of West Drive, as the district court noted, affects Greene "just [like] every other citizen," white and black, by "deny[ing] access to West Drive from the north." Yet, as noted above, the complaints also reasonably allege that the city has conferred certain benefits on white residents of West Drive, though refusing to confer those benefits on similarly situated black neighborhoods, thereby falling within the *Palmer* caveat that

> "[s]hould citizens of . . . [any] city be able to establish in court that public, tax-supported swimming pools are being denied to one group *because* of color and supplied to another, they will be entitled to relief." 403 U.S. at 227, 91 S.Ct. at 1946, 29 L.Ed.2d at 446 (emphasis supplied).

Similarly, the complaint falls within *Hawkins v. Town of Shaw,* 437 F.2d 1286 (5th Cir. 1971), 461 F.2d 1171 (5th Cir. 1972) (*en banc*), which condemned the conferral of municipal services on racial bases.

We recognize that the allegations nowise approach the egregiousness of the facts found in *Town of Shaw,* and endorse the *Town of Shaw* caveat that it is not to be "impl[ied] or suggest[ed] that every disparity of services between citizens of a town or city creates a right of access to the federal courts for redress. We deal only with the town of Shaw, Mississippi, and the facts as developed in this record." 461 F.2d at 1173.

See *Towns v. Beame,* 386 F.Supp. 470 (S.D. N.Y.1974) (even assuming that the closing of eight fire companies had disproportionate impact on racial minority response areas, no "sufficiently serious" question of equal protection to justify preliminary injunction, where fire department has satisfactorily rebutted plaintiffs' prima facie case of racial discrimination by proving non-racial rationale for closings).

To establish a section 1982 or 1983 claim on remand, Greene must prove his allegations that city officials conferred the closed street on West Drive residents because of their color; he must prove racial motivation, intent or purpose, in the absence of such egregious differential treatment as to in itself violate equal protection or, alternatively, to command an inference of racial motivation. Compare *Nashville I–40 Steering Comm. v. Ellington,* 387 F.2d 179, 185 (6th Cir. 1967), *cert. denied,* 390 U.S. 921, 88 S.Ct. 857, 19 L.Ed.2d 982 (1968), and *Kelly v. Romney,* 316 F.Supp. 840, 844 (S.D.Ohio 1970), with *Town of Shaw, supra.* See also *Bronson v. Board of Educ.,* 525 F.2d 344, 347–49 (6th Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 1665, 48 L.Ed.2d 175 (1976).

This view does not conflict with *Palmer, supra,* which noted that "no case in this Court has held that a legislative act may violate equal protection *solely* because of the motivations of the men who voted for it." 403 U.S. at 224, 91 S.Ct. at 1944, 29 L.Ed.2d at 444 (emphasis supplied). See *Citizens Comm. for Faraday Wood v. Lindsay,* 507 F.2d 1065, 1070 n. 11, 1074 n. 6 (2d Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 102 (1975), and ac-

companying text. In *Palmer,* the closings left whites and blacks alike without municipal pools; consequently, there was "no state action affecting blacks differently from whites." 403 U.S. at 225, 91 S.Ct. at 1945, 29 L.Ed.2d at 445. According to the instant complaint allegations, the closing of West Drive left certain white residents with privacy and quiet of a dead-end street, though black residents, for racial reasons, have been and would be unable to acquire such a dead-end street.

In reversing, we, of course,

"intimate no evaluation whatever as to the merits of [Greene's] claims or as to whether it will be possible to support them by proof. We hold only that, on the allegations of [his] respective complaints, [Greene was] entitled to have them judicially resolved."

*Scheuer, supra,* 416 U.S. at 250, 94 S.Ct. at 1693, 40 L.Ed.2d at 105.

Reversed and remanded.