972 F.2d 346
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elizabeth ALLEN; Ernest Allen; the Elizabethen Club,
Plaintiffs-Appellants,
v.
LOUISVILLE CITY POLICE DEPARTMENT and City of Louisville,
Defendants-Appellees.
 No. 91-6277.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1992.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs Ernest and Elizabeth Allen appeal the district court's grant of summary judgment to defendants City of Louisville and Louisville City Police Department on their claims under 42 U.S.C. §§ 1982, 1983, and 1985(3). On appeal, plaintiff raises several issues: (1) whether the district court properly granted summary judgment on plaintiffs' section 1982 claim for failure to show that defendants acted with racial animus; (2) whether the district court properly granted summary judgment on plaintiffs' section 1985(3) claim for failure to show that defendants acted with an invidiously discriminatory class-based animus; and (3) whether the district court properly granted summary judgment on plaintiffs' section 1983 claim where plaintiffs allege violations of Kentucky law, the Equal Protection Clause, the Just Compensation Clause and deprivations of their liberty and property interests in violation of the Due Process Clause of the Fourteenth Amendment. For the reasons that follow, we affirm.
 
 I.
 
 2
 Ernest and Elizabeth Allen, husband and wife, own a supper club known as the Elizabethen Club ("Club") located at 902 and 904 S. 15th Street. Beginning May 26, 1990, and continuing for four weeks thereafter, the Louisville City Police blocked off the streets surrounding the Club. According to plaintiffs, customers of the Club were prevented from parking in the lot normally used by their patrons, and many were discouraged from entering the Club. In addition, the police allegedly told many persons that the Club was closed or that they could not go inside the Club.
 
 
 3
 According to defendants, the Louisville Police Department had been receiving complaints since 1986 regarding traffic congestion, noise, and litter from residents in the neighborhood where the Club was located. On occasion, as many as 300 persons would gather on the street immediately in front of the Club and the surrounding area thereby preventing the safe flow of traffic and impeding emergency vehicles. As a result the street would become severely congested. In addition, the crowd was disorderly and disturbed the entire neighborhood.
 
 
 4
 Defendants deny that they told citizens the Club was closed when it was actually open during the five weekends at issue. Rather, the defendant police department states that it temporarily redirected traffic in the area surrounding the plaintiffs' business in order to preserve the tranquility and safety of the neighborhood. This task was accomplished by setting up barricades along the streets surrounding the Club and by allowing vehicular traffic to enter the area only if parking was available. Vehicles were allowed to travel on the public way in front of the Club until all available parking had been exhausted. According to defendants, this type of intervention was referred to as a "hot spot detail" used to disperse crowds at establishments within the city's fourth district area.
 
 
 5
 Plaintiffs do not dispute that there were complaints from neighborhood residents regarding traffic congestion, noise, and litter or that, in fact, these conditions did exist. However, they do dispute the seriousness of the problem. While plaintiffs do not provide specific details regarding their version of the traffic congestion, litter, and noise problems, they maintain that the police department's actions in this case were excessive causing needless harm to their business, which experienced a sharp decline in patronage.
 
 
 6
 Plaintiffs commenced this action on July 10, 1990, alleging claims on the basis of sections 1982 and 1985 only. Thereafter, on April 24, 1991, defendants made a motion for summary judgment. During the pendency of defendants' motion and as part of their motion in opposition to summary judgment, plaintiffs moved to amend their complaint to include a claim under section 1983. While the district court granted plaintiffs' motion, it also granted defendants' motion for summary judgment on all plaintiffs' claims on September 27, 1991. This timely appeal followed.
 
 II.
 A.
 
 7
 This court reviews a district court's grant of summary judgment de novo. See Brooks v. American Broadcasting Cos. Inc., 932 F.2d 495, 500 (6th Cir.1991). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). Material facts are those facts only that might effect the outcome of the action under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Boyd v. Ford Motor Co., 948 F.2d 283, 285 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992). In reviewing a motion for summary judgment, the district court must consider the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255; Boyd, 948 F.2d at 285.
 
 B.
 
 8
 At the beginning of his oral argument, counsel for plaintiffs conceded that plaintiffs' claims under 42 U.S.C. §§ 1982 and 1985(3) have no merit as plaintiffs failed to allege that defendants' actions were motivated by racial animus. In this connection, we note that, in their depositions, both plaintiffs testified that they did not believe defendants' actions were racially motivated nor do plaintiffs now claim that defendants acted with racial animus. It is well-settled that one must plead and prove racial animus to succeed on a section 1982 claim. See Jones v. Alfred H. Mayer Co., 392 U.S. 409 (1968); and N.T. Greene v. City of Memphis, 535 F.2d 976 (6th Cir.1976).
 
 
 9
 Moreover, we note that to prevail on a section 1985(3) claim, the plaintiff must prove, among other elements, that the defendant was motivated by an intent to discriminate on the basis of race or some other class-based, invidiously discriminatory animus. See United Broth. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 834-39 (1983); Wolotsky v. Huhn, No. 91-3677, 1992 WL 65441, * 6 (6th Cir. March 4, 1992).
 
 C.
 
 10
 Plaintiffs, however, continue to argue that defendants' actions violated 42 U.S.C. § 1983. Section 1983 provides a private right of action against any person who under color of law deprives another person of "rights, privileges, or immunities secured by the Constitution and laws." Furthermore, where the defendant is a municipality as in this case, the plaintiff must show that the defendant's objectionable actions were made pursuant to an official city policy or custom.[1] Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 691-95 (1978); Beddingfield v. City of Pulaski, Tenn., 861 F.2d 968, 971 (6th Cir.1988).
 
 
 11
 For a plaintiff to prevail under section 1983, he or she must allege and ultimately prove that he was deprived of a right secured to him by the United States Constitution or laws of the United States. Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 155-57 (1978); Brotherton v. Cleveland, 923 F.2d 477, 479 (6th Cir.1991). Although plaintiffs' arguments and amended complaint are not entirely clear, when construing plaintiffs' amended complaint liberally, it appears that plaintiffs' section 1983 claim rests on four separate bases. These are (1) violations of plaintiffs' rights under Kentucky law, (2) a violation of plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment, (3) a taking of plaintiffs' property rights without just compensation in violation of the Fifth Amendment made applicable to the states through the Fourteenth Amendment, and (4) a deprivation of plaintiffs' property and liberty interests in violation of the Due Process Clause of the Fourteenth Amendment.
 
 
 12
 First, the district court correctly determined that plaintiffs' section 1983 claim based on alleged violations of Kentucky law must fail because violations of state law cannot support a section 1983 claim. As previously stated, such a claim must be based on alleged violations of the federal Constitution or laws. Id.
 
 
 13
 Second, plaintiffs allege that defendants violated their rights under the Equal Protection Clause because their club was treated differently from other clubs. The district court did not address this claim. In any event, this claim fails because plaintiffs have not alleged that defendants' actions were motivated by any type of class-based animus. In fact, plaintiffs have offered no hypothesis to explain why the police, in their view, treated their club differently from other clubs nearby. To prevail on an equal protection claim, the plaintiff must allege, in part, that the defendant intentionally discriminated against him because he was the member of a particular class. See, e.g., Curto v. City of Harper Woods, 954 F.2d 1237, 1244-45 (6th Cir.1992) (per curiam) (city ordinance which determined the number of vehicles that could be parked on a business' premises and which treated service stations differently from other businesses did not violate equal protection standards).
 
 
 14
 Third, plaintiffs allege that the defendants' actions constitute an inverse condemnation resulting in an unconstitutional taking of their property without just compensation. Plaintiffs argue that because of defendants' actions, their customers are now unwilling to return to the Club for fear of police harassment or due to an erroneous assumption that because the police blocked off the area surrounding the Club, there must be illegal activities taking place in the Club. The district court granted defendants summary judgment on this claim on the basis that no taking had occurred.
 
 
 15
 It is not necessary for us to consider the merits of this claim. In order to bring a claim of inverse condemnation in violation of the Takings Clause of the Fifth Amendment, the plaintiff must have exhausted his state remedies for obtaining just compensation. See Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985); and Curto, 954 F.2d at 1245. More specifically, plaintiffs bear the burden to show that they have exhausted their state remedies or, in the alternative, that inadequate state remedies exist to address their claim. See United States v. Confederate Acres Sanitary Sewage and Drainage System, Inc., 935 F.2d 796, 799-800 (6th Cir.1991) ("property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State."); G.M. Engineers & Associates, Inc. v. West Bloomfield Township, 922 F.2d 328, 331 (6th Cir.1990) (plaintiff's claim of taking without just compensation by inverse condemnation failed where plaintiff did not allege that state law was inadequate or unavailable to address his claim). A review of the record reveals that plaintiffs have neither sought a state remedy nor plead that an inadequate state remedy exists. Therefore, summary judgment for defendants was appropriate as to this claim.
 
 
 16
 Fourth, plaintiffs also argue that they were denied due process of law in violation of the Fourteenth Amendment in that they were deprived of a liberty interest, viz, the right to pursue their livelihood without unreasonable governmental interference, and also were deprived of a property interest. While the district court did not address this procedural due process claim, it appears that it was set forth in the complaint and, thus, should be addressed. As with the previous claim, however, we need not reach the merits. Where a plaintiff alleges the deprivation of a property or liberty interest without procedural due process of law, then the plaintiff must plead that no adequate state remedies exist before we will consider the claim. Watts v. Burkhart, 854 F.2d 839, 843 (6th Cir.1988); Vicory v. Walton, 721 F.2d 1062, 1065-66 (6th Cir.1983), cert. denied, 469 U.S. 834 (1984). Thus, summary judgment was appropriately granted on the property claim as well.
 
 
 17
 As to plaintiffs' substantive due process claim alleging the deprivation of a liberty interest, their counsel also conceded at oral argument that he only alleged recklessness on the part of the defendants. The proper standard for reviewing a substantive due process claim for deprivation of liberty interest arising under the Fourteenth Amendment is to determine if there was conduct which shocks the conscience of the court. United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 35 (6th Cir.1992) (per curiam); GM Engineers and Associates, Inc. v. West Bloomfield Township, 922 F.2d 328, 332 (6th Cir.1990); McMaster v. Cabinet for Human Resources, 824 F.2d 518, 522 (6th Cir.1987).
 
 
 18
 When considering the facts of this case in the light most favorable to plaintiffs, we hold that the actions of the defendants as alleged are not egregious enough to rise to the level of a substantive due process claim. Rather, the defendants engaged in the exercise of a valid police power, viz., to preserve the peace and tranquility of the neighborhood by attempting, for a comparatively short period of time, to control the traffic congestion, noise, and litter caused by the plaintiffs' establishment. Thus, as we view the defendants' actions to be reasonable under the circumstances, plaintiffs' substantive due process claim must also fail.
 
 III.
 
 19
 For the stated reasons, the district court's grant of summary judgment is AFFIRMED.
 
 
 
 [1]
 In their original complaint setting forth their sections 1982 and 1985(3) claims, plaintiffs stated that the City was liable under the theory of respondeat superior for the acts of the police department. Plaintiffs did not make this statement in regard to their section 1983 claim, and the issue of whether plaintiffs have sufficiently plead an official city policy or custom in their section 1983 claim has not been raised by defendants or addressed by the district court. Accordingly, we will not consider it