**Lonzo DRUMRIGHT, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**Frank PADZIESKI et al., Defendants.**

**Civ. A. No. 7–70477.**

United States District Court, E. D. Michigan, S. D.

Aug. 22, 1977.

Kurt Berggren, Ann Arbor, Mich., for plaintiff.

James H. White, Asst. Atty. Gen., Michele C. Mayes, Asst. U. S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

### PHILIP PRATT, District Judge.

Plaintiff has filed suit on behalf of himself and others similarly situated against the United States Secretary of Labor and members and executive director of the Michigan Employment Security Commission (MESC). Plaintiff asserts that the state-enacted statutes and regulations governing MESC violate the due process clause of the Fourteenth Amendment, and the terms and purpose of the Social Security Act, 42 U.S.C. §§ 501–4, by permitting the termination of unemployment compensation benefits without a prior hearing. Plaintiff seeks declaratory and injunctive relief as well as retroactive payment of funds he alleges were wrongfully withheld.

The operation of unemployment insurance programs is a joint state-federal venture. Michigan has enacted the Michigan Employment Security Act which empowers the MESC to administer an unemployment compensation program within the borders of the state. See M.C.L.A. § 421.1 et seq. The federal government provides funds for expenses upon proper certification by the Secretary of Labor to the Secretary of the Treasury. 42 U.S.C. § 502 et seq.; 26 U.S.C. § 3301 et seq.

Plaintiff received unemployment compensation benefits from October 2, 1976 through November 6, 1976 following a determination that he was eligible for such benefits. Subsequently, pursuant to state regulations, plaintiff's former employer protested that plaintiff had been discharged for good cause and was not legally eligible. On November 22, 1976, MESC notified the plaintiff that it had redetermined the matter and that he was ineligible. Plaintiff was ordered to repay all benefits received.

The case is before the Court on several motions. Both the state and federal defendants have filed motions to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted. Plaintiff has filed motions for preliminary injunction, for class certification and for intervention on behalf of several others.

## I. MOTIONS TO DISMISS

### A. *Jurisdiction*

The state defendants argue that the Court lacks jurisdiction over the subject matter and over the individual state defendants. The plaintiff asserts several jurisdictional bases only one of which need be considered at this juncture.

The complaint charges that the defendants' procedures deprive plaintiff of his right to due process of law. 42 U.S.C. § 1983 creates a cause of action against

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, . . . "

Section 1983, of course, is not jurisdictional. Plaintiff relies for its jurisdictional base on 28 U.S.C. § 1343(3), which provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States . . . "

The state defendants apparently do not quarrel with the fact that as a formal, logical matter, plaintiff's complaint falls within the coverage of Sections 1983 and its jurisdictional counterpart, Section 1343(3), for it is clear from reading the complaint that plaintiff's first cause of action alleges a deprivation under color of state law and regulation of plaintiff's Fourteenth Amendment rights. Rather, the state defendants argue that jurisdiction is not proper because

"previous decisions of the United States Supreme Court render the claim frivolous and obviously without merit." The Court cannot agree with this assertion.

In *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) the Supreme Court held that there was jurisdiction in a federal district court to entertain a class action on behalf of AFDC recipients challenging state procedures that permitted recoupment of certain emergency payments. In the course of that opinion the court discussed the issue of "substantial federal question" in the context of 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). The court said that:

> "Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579 [24 S.Ct. 553, 557, 48 L.Ed. 795] (1904); 'wholly insubstantial,' *Bailey v. Patterson,* 369 U.S. 31, 33 [82 S.Ct. 549, 550–551, 7 L.Ed.2d 512] (1962); 'obviously frivolous,' *Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288 [30 S.Ct. 326, 327, 54 L.Ed. 582] (1910); 'plainly unsubstantial,' *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105 [53 S.Ct. 549, 550, 77 L.Ed. 1062] (1933); or 'no longer open to discussion,' *McGilva v. Ross,* 215 U.S. 70, 80 [30 S.Ct. 27, 31, 54 L.Ed. 95] (1909)." *Id.* at 536–7, 94 S.Ct. at 1378.

■ The state defendants argue that this complaint fails to meet even this loose standard, relying on *Torres v. New York State Department of Labor,* 333 F.Supp. 341 (S.D. N.Y.1971), aff'd mem, 405 U.S. 949, 92 S.Ct. 1185, 31 L.Ed.2d 228 (1972). Initially it should be observed that the sufficiency of a complaint for purposes of jurisdiction is different than the sufficiency of a complaint to withstand a motion to dismiss for failure to state a claim upon which relief can be granted. As the Supreme Court has indicated:

> "Jurisdiction, therefore, is not defeated as respondents seem to contend, by the

possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (citations omitted).

Here, too, the issue is not whether plaintiff has stated a claim upon which relief can be granted within the meaning of FRCP 12(b)(6), but, rather, whether the allegations of the complaint are so insubstantial that they deprive this Court of jurisdiction.

*Torres v. New York State Department of Labor, supra,* does not deal directly with the matter presently in issue. In that case the Supreme Court upheld the determination of a three-judge court, after remand, that New York's procedures were not contrary to federal law. In the previous opinion, *Torres v. New York State Department of Labor,* 321 F.Supp. 432 (S.D.N.Y.1971), vacated and remanded 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133 (1971), the district court ruled that New York's procedures for suspending or terminating unemployment compensation benefits without a full hearing did not violate the dictates of due process of law. Jurisdiction over the constitutional claim was never considered by any of the reported opinions. Thus, it can be inferred that the state defendants' real argument is that *Torres* establishes as a matter of controlling law that hearings are not required prior to the suspension or termination of unemployment compensation benefits and therefore plaintiff's complaint is "insubstantial."

■ The Court must first consider the precedential effect of the Supreme Court's summary affirmance of *Torres.* State defendants argue that the summary affirmance in *Torres* conclusively established that

hearings such as those required in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) are not required in unemployment benefit programs. Despite the fact that "the lower courts are bound by summary decisions by [the Supreme] court ' "until such time as the Court informs [them] that [they] are not," ' " *Hicks v. Miranda*, 422 U.S. 332, 344–5, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975), quoting *Doe v. Hodgson*, 478 F.2d 537, 539, *cert. den. sub nom. Doe v. Brennan*, 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973), defendants' argument is not persuasive. In remanding the case the Supreme Court instructed the three-judge court to consider the impact of *California Dept. of Human Resources v. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971) which involved a statutory challenge to the state's unemployment compensation award procedures. In accordance with the remand the lower Court restricted itself to that particular issue. Thus, the Supreme Court in its affirmance did not review the *constitutional* questions adjudicated in the earlier opinion. The fact that three justices of the Supreme Court dissented from the Court's failure to apply the rule of *Goldberg v. Kelly, supra,* to Mr. Torres' case suggests that the Supreme Court did affirm the judgment that New York's particular scheme did not violate due process. That, however, does not settle the issue

with respect to the Michigan procedures and regulations at issue. It is clear that issues not presented to the Supreme Court are not decided by summary affirmances. Summary affirmances should be narrowly limited to the issues in their jurisdictional statements. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 14, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).[1] Here the averments of the complaint suggest that the New York and Michigan procedures differ. Mr. Torres in New York was granted an interview prior to the suspension of his benefits. Mr. Drumright in Michigan was not. Whether this is a dispositive difference concerning the merits of the case is not now an issue.[2] What is of significance is that Michigan's particular procedures have not been adjudicated to be in compliance with the dictates of the Fourteenth Amendment. Plaintiff has, therefore, stated a substantial federal question over which this Court has jurisdiction under 28 U.S.C. § 1343(3).

 Having ruled that the Court has jurisdiction over the plaintiff's constitutional claims, the Court concludes that it would be appropriate to exercise pendent jurisdiction over the plaintiff's statutory causes of action.[3] The pendent claims here are remarkably similar to those in *Hagans v. Lavine, supra*. In *Hagans* the plaintiff argued that the welfare regulations at issue violat-

1. The Supreme Court recently outlined the manner in which the district courts should consider the precedential impact of summary affirmances. In *Mandel v. Bradley*, ── U.S. ──, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977), the lower court had relied upon a summary affirmance in *Tucker v. Salera*, 424 U.S. 959, 96 S.Ct. 1451, 47 L.Ed.2d 727 (1976) which had declared a certain Pennsylvania election law unconstitutional. In vacating the case and remanding it to the lower court, the Supreme Court said:

"Here, the District Court ruled that legally '*Salera* decides the issue before us, and as the latest expression of the Supreme Court, we are bound to follow it.' J.S. 12a. The precedential significance of the summary action in *Salera*, however, is to be assessed in the light of all of the facts in that case; and it is immediately apparent that those facts are very different from the facts of this case." *Mandel v. Bradley, supra,* ── U.S. at ──, 97 S.Ct. at 2240.

The Court concluded that since *Salera* was distinguishable from *Mandel*, it was not controlling. That is precisely the situation this Court faces in the instant case.

2. Ultimately, of course, the factual record will be of the greatest importance. Before completion of the further proceedings contemplated in this Opinion, counsel should engage in searching discovery which will dramatically improve the state of the facts before the Court. The inadequacy of the factual record has hampered the Court's ability to view the issues in the most complete context.

3. Plaintiff concedes that the maximum monetary recovery (prospective or retrospective) is $8,840.00 for any individual plaintiff. Thus, even as a class action the monetary requirement of 28 U.S.C. § 1331 is not met. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1974). The $10,000 jurisdictional limit does not apply to the federal defendant. 28 U.S.C. § 1331(a). 90 Stat. 2791.

ed both the equal protection clause of the Fourteenth Amendment and provisions of the Social Security Act. In analyzing the statutory claims, which the Court considered essentially a supremacy clause issue, the Court said that the reasons for exercising pendent jurisdiction are especially strong when the statutory claims raise issues of federal policy. *United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). See *Rosado v. Wyman*, 397 U.S. 397, 403–4, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). The principles of comity and federalism favoring state adjudication of pendent claims

"are wholly irrelevant where the pendent claim is *federal* but is itself beyond the jurisdiction of the District Court for failure to satisfy the amount in controversy. In such cases, the federal court's rendition of federal law will be at least as sure-footed and lasting as any judgment from the state courts." *Hagans v. Lavine, supra* 415 U.S. at 548, 94 S.Ct. at 1385.

Here, the interests of judicial economy and convenience compel the Court to exercise its discretion to take jurisdiction over the pendent statutory claims.[4]

■ The federal defendant also contests the existence of jurisdiction over him. It is conceded that the jurisdictional authority over the state defendants, 28 U.S.C. § 1343(3), does not apply to a federal officer. Nor, it is also conceded, does the Administrative Procedure Act provide jurisdiction. *Sanders v. Califano*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Plaintiff argues that jurisdiction over the federal defendant can be found in federal question jurisdiction, the mandamus act or the jurisdictional predicate for commerce clause ac-

tions. The federal defendant, in his brief spends considerable time arguing the merits of plaintiff's commerce clause and mandamus contentions but fails to discuss federal question jurisdiction. 28 U.S.C. § 1331 was amended in October, 1976, P.L. 94–574, § 2, to read:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity."

Thus, it appears, as to the federal defendant, the inability of the individual plaintiffs to demonstrate the requisite $10,000 claim is irrelevant. The Secretary may be sued in his official capacity for both Constitutional and statutory violations without regard to the amount in controversy.[5]

### B. *Sovereign Immunity*

■ Both federal and state defendants assert that this action is barred by the doctrine of sovereign immunity. The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

This Constitutional provision, which embodies the doctrine of sovereign immunity, has been held to extend to suits against a state

---

4. The jurisdictional ruling of the Court makes it unnecessary to consider whether plaintiff's remaining jurisdictional bases are meritorious. The Court does note, however, that plaintiff's responsive brief appears to concede that the declaratory judgment act, 28 U.S.C. § 2201 and the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. and 701 et seq. and the Mandamus Act, 28 U.S.C. § 1361, do not provide jurisdiction over the state defendants. The Court leaves open the issue of whether the

Commerce Clause gives jurisdiction, 28 U.S.C. § 1337, and whether the Social Security Act is a statute within the meaning of 42 U.S.C. § 1983 such that jurisdiction would thereby arise under 28 U.S.C. § 1343(3).

5. At oral argument in this matter plaintiff disclaimed any intention to pursue any cause of action against the Secretary of Labor personally. The complaint is therefore dismissed as against E. Ray Marshall personally.

by its own citizens. *Employees v. Missouri Public Health Dept.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Parden v. Terminal R. Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). This is so whether the suit is nominally against the state or some individual in his or her individual capacity. *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

The resolution of the state defendants' sovereign immunity claim rests on the application of *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In that case an individual charged a state welfare department with administering Aid to Aged Blind and Disabled, under the Social Security Act, in a manner inconsistent with federal regulations and the Constitution. The complaint requested declaratory, injunctive and monetary relief. The court held that the Eleventh Amendment barred a monetary award of retroactive benefits, but did not prevent the expenditure of public funds that might arise from a prospective injunctive remedy or declaratory judgment.

The Supreme Court recognized the long established rule,

"that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. *Great Northern Life Ins. Co. v. Read* [322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944)]; *Kennecott Copper Corp. v. State Tax Comm'n.*, 327 U.S. 573 [66 S.Ct. 745, 90 L.Ed. 862] (1946)." *Id.* at 664, 94 S.Ct. at 1356.

The Court then referred to *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) which held that the Eleventh Amendment did not bar an action in federal court to enjoin a state attorney general from enforcing a statute claimed to violate the Fourteenth Amendment, and concluded

"Though a § 1983 action may be instituted by public aid recipients such as respondent, a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, *Ex Parte Young, supra*, and may not include a retroactive award which requires the payment of funds from the state treasury, *Ford Motor Co. v. Department of Treasury, supra*." *Edelman v. Jordan, supra*, 415 U.S. at 677, 94 S.Ct. at 1362.

Thus, it is clear that the Eleventh Amendment does not bar the injunctive and declaratory relief the plaintiff seeks.

■ The federal defendant argues that the doctrine of sovereign immunity bars suits against him because the net effect of a judgment in favor of plaintiff would be to require the expenditure of public funds. *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Land v. Dollar*, 330 U.S. 731, 91 L.Ed. 1209, 67 S.Ct. 1009 (1948). These arguments do not stand the test of changing times. The Secretary of Labor is subject to the same exceptions to the sovereign immunity doctrine as other federal officials—actions exceeding an official's statutory authority, or if, within statutory authority, actions that are constitutionally void. *Martinez v. Dunlop*, 411 F.Supp. 5, 8 (N.D.Cal.1976). Thus, in suits such as this, sovereign immunity has not been found to bar relief against the Secretary of Labor. *Phillips v. Dawson*, 393 F.Supp. 360 (W.D.Ky.1975). Cf. *California Dept. of Human Resources v. Java, supra* at n. 19 (intimating that the Secretary of Labor is a necessary party in a suit of this nature).

■ Plaintiff argues that the retroactive payment of funds portion of the *Edelman v. Jordan* ruling should not apply in the facts of this case because the monies are not strictly state monies. This Circuit has recognized that the purpose of the sovereign immunity rule, as it presently exists, is to protect the government's fiscal integrity. *Jordon v. Gilligan*, 500 F.2d 701, 706 (6th Cir. 1974), *cert. denied*, 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975). Taxes paid by employers are deposited into trust funds to be used to pay unemployment ben-

efits to workers. These funds, however, are not, as plaintiff implies, the funds of employers, but rather are state funds which are to be used in a limited manner. *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 364, 71 S.Ct. 337, 95 L.Ed. 337 (1951). See M.C.L.A. § 421.26(d). Whether they are called general revenues or trust funds, the impact of a retroactive award of the state's treasury is the same. The Court concludes, therefore, that the suit may go forward only with respect to the requests for declaratory and injunctive relief.

## C. *Failure to State a Claim Upon Which Relief can be Granted*

▮ Defendants argue that neither the constitutional nor the statutory claims are sufficient to withstand a motion to dismiss for failure to state a claim upon which relief can be granted brought under FRCP 12(b)(6). The federal defendant concedes that the due process clause does apply to terminations of unemployment compensation benefits because they are statutorily created property interests, within the meaning of the Fifth and Fourteenth Amendments. (Motion to Dismiss, p. 5). This concession accurately reflects the law as reported in cases discussed below. As the federal defendant notes, however, "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Relatively few cases discuss the issues raised in this aspect of the motion. The parties agree that analysis of these cases should lead to an elucidation of the correct rule of applicable law.

In *Graves v. Meystrik,* 425 F.Supp. 40 (E.D.Mo.1977), *aff'd. mem,* 431 U.S. 910, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977) a three-judge court ruled that while the due process clause applied to the termination of unemployment benefits, the particular provisions of Missouri's unemployment insurance program did not require a pretermination hearing. Employing the three-part balancing test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the court determined after a trial on the merits that viewed in totality the Missouri program was constitutionally adequate. Facts developed by the parties revealed that in Missouri less than 20 per cent of the original administrative redeterminations were reversed on appeal and that more than 70 per cent of all appeals from redeterminations were resolved within 45 days. The court concluded that in view of these facts, particularly the small likelihood of initial administrative error, the state's interest in lowering administrative costs outweighed the need of unemployment compensation recipients for a hearing prior to termination of benefits, since other sources of income were available.

The court in *Java v. California Dept. of Human Resources* 317 F.Supp. 875 (N.D.Cal. 1970), *aff'd on other grounds, supra,* reached a different conclusion about California's termination procedures. In *Java* the parties stipulated concerning the actual practices of the California Department of Human Resources. In California, under then existing procedures, a state worker made a determination of eligibility for unemployment compensation benefits based upon information provided by the employer and the applicant. If the initial determination was favorable to the applicant the employer had ten days in which to appeal. If the employer appealed, benefit payments were automatically suspended until final determination which then took an average of seven weeks. The court in *Java* held that unemployment benefits became "due," within the meaning of the Social Security Act, at the time of the initial determination of eligibility and that, further, the subsequent automatic suspension, without any hearing, violated the applicant's right to due process of law. The *Java* court found no distinguishing feature between unemployment insurance beneficiaries and the welfare recipients in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) who were found to be entitled to a pretermination hearing.

The Virginia Supreme Court rejected a due process challenge in similar, but not identical, facts in *Klimko v. Virginia Em-*

*ployment Commission*, 216 Va. 750, 222 S.E.2d 559 (1976). In *Klimko* the plaintiff had been receiving unemployment benefits in Virginia. He then moved to Ohio and transferred benefits pursuant to an interstate agreement. While in Ohio he refused a job offer. He reported this to the Ohio office. Ohio officials interviewed the plaintiff, wrote a summary of the interview, which the applicant signed, and sent the results of their investigation to Virginia. Virginia officials terminated plaintiff's benefits on the basis of the written record transmitted from Ohio. The case reached the Virginia Supreme Court following judicial decision on plaintiff's complaint for review of the administrative action.

The Virginia Supreme Court analyzed the question as if the due process clause applied without so deciding. The court examined Virginia's procedures and determined that in this case plaintiff received notice of the charges against him and an interview at which he could explain his position prior to termination. He received consideration by an impartial decision maker. Before the termination became final, he received a full hearing. The court concluded:

> "In such case, involving only property rights, precedents indicate that when a constitutionally sufficient post-termination hearing is provided, due process does not categorically mandate a pretermination hearing if there are safeguards against mistaken termination."
>
> *Id.* 222 S.E.2d at 567.

Like the *Graves* court, the Virginia Supreme Court decided that the availability of alternative emergency sources of income, such as welfare, and the existence of procedures designed to minimize the risk of initial error dictated the conclusion that in the particular case due process was not slighted.

Defendants rely most strongly on *Mathews v. Eldridge, supra.* In *Mathews* the court held that the due process clause does not require a full evidentiary hearing prior to the termination of Social Security Disability benefits. The Court addressed the issue of what process was due prior to termination, since it was conceded that "some form of hearing is required before an individual is finally deprived of a property interest." *Id.* 424 U.S. at 333, 96 S.Ct. at 902. The Court formulated a three step balancing test. The relevant considerations are (1) the private interest in the property right at stake; (2) the risk of an erroneous decision and the probable value of alternative procedural safeguards, and (3) the government's interest in the current procedures, especially as to fiscal and administrative burdens.

In weighing these factors in the context of social security disability terminations, the Court found that the private interest was only in the uninterrupted receipt of this income, since a full hearing would be accorded at some point, albeit as much as one year later. The Court found this interest far from compelling.

> "In view of these potential sources of temporary income there is less reason here than in *Goldberg* to depart from the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action."
>
> *Id.* at 343, 96 S.Ct. at 907.

The Court found the risk of erroneous initial decision minimal, because the evidence was almost entirely medical in nature, and therefore documentary. Thus, credibility issues and oral presentations of the applicant were much less essential than in the case of the often unlettered welfare recipient. Finally the Social Security Disability recipient had access to the medical evidence prior to the termination decision. The Court found that the government interest in not paying benefits needlessly, while not controlling, was significant. The Court held that all that due process required in that situation was a meaningful opportunity to be heard prior to termination, which had been provided.[6]

---

**6.** Immediately prior to concluding that an evidentiary hearing was not necessary before disability benefits were terminated Justice Powell noted that "the prescribed procedures not only

■ A review of these cases discloses that they do not, as defendants argue, hold that a pretermination evidentiary hearing is never constitutionally required in unemployment insurance cases. Rather, they require the district courts to engage in a careful, three-part balancing test to determine whether the flexible requirements of due process have been met in the particular situation. The state of the pleadings place the Court in a difficult position. Pleadings by both parties are replete with conclusionary allegations and lack useful affidavits or stipulations. However, the Court is mindful that the context of this motion is whether, taking the allegations of the complaint most favorably to the plaintiff, a cause of action has been stated. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The plaintiff's interest in the present case is the same as that of the plaintiff in *Mathews v. Eldridge, supra*—the uninterrupted payment of benefits—for Michigan does provide for a fair hearing prior to final termination of benefits. M.C.L.A. § 421.33. There is some dispute as to the relevant facts in the second phase of the balancing test, concerning the risk of an erroneous determination. Plaintiff avers that he received no prior notice of the redetermination of November 22, 1976 which cancelled his benefits and ordered repayment. The federal defendant claims that "At redetermination, the same procedures are followed as during the original determination. Information is taken from both parties. In the event conflicting information is submitted, each party is given an opportunity to respond, explain and rebut." (Brief of U.S. at 9, 14). Plaintiff has also supplied the Court with exhibits tending to show that the Michigan experience is that signifi-

cant numbers of appeals result in reversals and that less than half of all appeals are completed within 75 days.

■ Thus it appears that *on the pleadings* the facts of the instant case are significantly different than those in *Graves* and *Klimko.* In addition, the considerations militating against attaching much weight to the second factor of the balancing test in *Mathews,* which involved medical evidence, are not present in unemployment compensation. Indeed the facts of the individual plaintiff's situation dramatically illustrate the kind of credibility factors which can only be resolved by an oral presentation.[7] Reduced to its simplest terms plaintiff has alleged that his previously awarded benefits were terminated and back pay ordered without any opportunity to present his side of the case in a system where reversals of initial determinations are commonplace and appeal procedures lengthy. Without intimating any belief as to the outcome of this matter after a trial on the merits, nor on a motion for summary judgment once the record in this matter is more complete, the Court concludes that plaintiff's constitutional claim does state a cause of action upon which relief can be granted.[8]

Defendants also challenge the adequacy of plaintiff's statutory claim. Plaintiff alleges that Michigan's unemployment compensation termination procedures conflict with the Social Security Act, specifically Section 303(a)(1) of the Act. That section provides:

"The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—Such methods of

---

provide the claimant with an effective process for asserting his claim prior to any administrative action, but also assure a right to an evidentiary hearing, as well as to be subsequent judicial review, before the denial of his claim becomes final." *Mathews v. Eldridge, supra* at 349, 96 S.Ct. at 909.

7. The critical question in this case is plaintiff's whereabouts at a particular time. The resolu-

tion of this question is dependent upon eyewitness testimony.

8. Nor does the Court mean to imply that if plaintiff were successful in his case-in-chief, relief would necessarily include a full-blown evidentiary hearing. As already noted, due process is flexible.

administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due."

42 U.S.C. § 503(a)(1).

The phrase "when due" has been construed to mean "the earliest stage of unemployment that [benefits] were administratively feasible after giving both the worker and the employer an opportunity to be heard." *California Human Resources Dept. v. Java, supra,* 402 U.S. at 131, 91 S.Ct. at 1354. The federal defendant concedes that the named plaintiff was awarded benefits payable under Section 303(a)(1) on October 14, 1976 for the weeks October 2 to November 6, 1976 inclusive. (Brief of U.S. at 3). Plaintiff argues that the termination and recoupment order of these benefits without a hearing violates the terms of the Social Security Act by failing to provide payment of unemployment benefits "when due."

The two leading cases construing Section 303(a)(1) are *California Human Resources Dept. v. Java, supra,* and *Torres v. New York Dept. of Labor, supra.* In *Java* the beneficiary challenged state procedures that resulted in an automatic suspension of benefit payments after a determination of eligibility if the employer appealed. The Supreme Court held that where the employer won less than 50% of the appeals and the average appeal took from six to eight weeks,

"It would frustrate one of the Act's basic purposes—providing a 'substitute' for wages—to permit an employer to ignore the initial interview or fail to assert and document a claimed defense, and then effectuate cessation of payments by asserting a defense to the claim by way of appeal."

402 U.S. at 134, 91 S.Ct. at 1355.

The Court ruled that the *Act* required something more than an automatic termination of benefits upon an employer's appeal. In *Torres,* the Supreme Court summarily affirmed a three-judge court ruling that New York's procedures for terminating welfare benefits did not violate section 303(a)(1). *Torres,* however, differed from

*Java,* in that in *Torres* the plaintiffs did not suffer automatic termination, but rather themselves either supplied the information or attended an interview prior to termination.

In *Fusari v. Steinberg,* 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) the Supreme Court had occasion again to comment upon section 303(a)(1). *Fusari* noted that the basic thrust of the "when due" provision was timeliness. 419 U.S. at 388, 95 S.Ct. 533. The Court indicated in a footnote that *Torres* should be read narrowly to give effect to *Java.* Specifically the Court underlined the fact-specific nature of the statutory inquiry.

"Any statutory requirement that embodies notions of timeliness, accuracy and administrative feasibility inevitably will generate fact-specific applications. In this instance many of the factual distinctions that the District Court relied on to distinguish *Torres* on the constitutional issue apply equally to the 'when due' question. For example, the delay in resolving administrative appeals is considerably greater in Connecticut than in the New York system, where administrative appeals were resolved in an average of 45 days. . . . And, as the District Court observed, the *Torres* court apparently did not consider the probable accuracy of the challenged procedure in determining whether it adequately assured delivery of benefits 'when due.' . . . We do not undertake to identify the combination of factors that justify the *Torres* decision. Having once decided the case summarily, we decline to do so again. We only indicate that the District Court should not have felt precluded from undertaking a more precise analysis of the statutory issue than it felt empowered to do in this case."

419 U.S. at fn. 15, 95 S.Ct. at 539. Thus, it is clear, *Torres* does not resolve the issue. Rather, the Court must engage in the same type of balancing test applied to the constitutional issue. Those same considerations suggest that plaintiff has pleaded a sufficient cause of action to withstand

a motion to dismiss under FRCP 12(b)(6). Here, too, the lack of any apparent hearing, the high rate of reversals on appeal and the lengthy appeal proceedings are all allegations which, if proven, could provide a basis for relief.

*Graves v. Meystrik, supra,* is not to the contrary. In *Graves* the court held that there was no statutory violation. The court specifically said that *"Java* would be applicable in this case if after a claimant is found eligible for a particular week,[9] his benefits for that week were terminated." 425 F.Supp. at 50. That, of course, is precisely the situation at bar insofar as can be discerned from the pleadings. Plaintiff was declared eligible for benefits. These benefits were then paid. Subsequently, this determination as to those particular benefits was reversed and restitution ordered.

### D. *Mootness*

■■■ Defendants raised the issue of mootness for the first time at oral argument. They offered no affidavits to substantiate their claim that plaintiff's controversy with them was at an end. Plaintiff's counsel acknowledged that Mr. Drumright received a favorable ruling from an MESC referee, but submitted an exhibit which showed that his case had been reopened on the referee's own motion. There is no indication in the record that plaintiff has received the benefits he claims entitlement to or that the state's policy and practice are not as he alleges. Under these circumstances, assuming without deciding that the issue of mootness is properly before the Court, the motion to dismiss will not be granted on this ground.

Accordingly, the defendants' motions to dismiss are denied, except insofar as they concern the award of retroactive benefits and relief against the Secretary of Labor personally, to which extent they are granted.

9. Missouri determined eligibility anew each week. Michigan apparently has a similar policy. MCLA § 421.28(1). However, as evidenced in the complaint, awards are given for more than one week.

### II. MOTION TO INTERVENE

■■■ Two individuals have come before the Court seeking to intervene as plaintiffs in this lawsuit. Each alleges that he was awarded unemployment insurance benefits which were subsequently terminated together with an order of restitution. One individual claims this redetermination took place without adequate notice, the other claims the redetermination took place entirely *ex parte.* Neither defendant has responded to the motion to intervene, except indirectly.

■■■ Intervention of right is appropriate when

"the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." FRCP 24(a)(2).

Permissive intervention is appropriate in the Court's discretion when "an applicant's claim or defense and the main action have a question of law or fact in common." FRCP 24(b)(2). Each intervenor presents the Court with a slightly different fact situation. The named plaintiff has had benefits terminated when his employer appealed the MESC's eligibility determination. Intervenor Easton had several weeks of benefits disallowed because his employer claimed that he was not "available" for work as required by statute. Intervenor Tripp claims to have had benefits disallowed due to MESC's administrative accounting errors.

The intervenors clearly meet the permissive intervention rules. There are significant common questions of law in their case and that of the named plaintiff. Their intervention at this early stage in the proceedings will work no hardship on the defendants. No new issues of law are raised. Moreover, the searching factual inquiry

that must be engaged in so that the Court may properly carry out the balancing process referred to previously would doubtless be assisted by the addition of other plaintiffs with factual situations different than that of the named plaintiff. The motion for intervention is therefore granted.[10]

### III. MOTION TO CERTIFY THE CLASS

Plaintiff seeks to pursue this litigation as the representative of a class of plaintiffs composed of

"all persons in the State of Michigan who, after an initial determination of eligibility and receipt of unemployment compensation benefits, have had or will have had their unemployment compensation benefits suspended, terminated, withheld or recouped (including an order of recoupment, even if not actually recouped) without a hearing comporting with due process requirements."

(Complaint, ¶ 8).

Plaintiff asserts the class is appropriate under FRCP 23(b)(2) which provides for a class action if the requirements of FRCP 23(a) are met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

There appears no dispute that the plaintiff has satisfied the requirements of FRCP 23(a) in the context of a (b)(2) class. While not ascertained with final exactitude, it appears the proposed class is large enough to make joinder of all members impractical. Indeed, defendants concede that there are many factual situations that could make any unemployment compensation benefi-

ciary into a class member. There certainly are questions of law and fact applicable to the class as a whole. Plaintiff's claim that he is entitled to a pretermination due process hearing is typical of the claim of the class as a whole. It is, in fact, the only claim that could be put forward by the class members in view of the Court's ruling on the sovereign immunity issue.[11] Finally, it is apparent that the plaintiff and intervenors have secured competent counsel to pursue this litigation. The Court finds that the claims of the putative class will be adequately asserted in this action.

It also appears that the requirements of FRCP 23(b)(2) are met in that defendants have refused to provide plaintiff with the hearing he requests for reasons that are applicable to all class members. For that reason injunctive and declaratory class-wide relief would be appropriate. The defendants do not seriously challenge the adequacy of plaintiff's showing. Rather, they focus their argument on the discretionary language of FRCP 23(b).[12] Defendants argue that a class action is unnecessary since the legal issue can be resolved without the necessity of class action; any declaratory and injunctive relief would be equally effective whether there is a class or not; and finally, that there is no reason to assume that defendants would not conform their conduct to any decree the Court might issue.

Defendants rely on the reasoning found in such cases as *Ihrke v. Northern States Power Co.*, 459 F.2d 566 (8th Cir. 1972), *vacated on other grounds* 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972) and *Martinez v. Richardson*, 472 F.2d 1121, 1127 (10th Cir. 1972). In *Ihrke* plaintiffs sued on behalf of gas and electric consumers claiming that termination of utility services without prior

---

**10.** The Court finds it unnecessary to determine whether intervention as of right is appropriate. Intervenors do assert a claim that might be hindered or impaired absent intervention. However, there is some question, in view of the pending motion for class certification, whether named plaintiff is not an adequate representative of their legal interests.

**11.** The federal defendant devotes substantial portions of its brief arguing against creation of a (b)(3) class that would award damages.

Plaintiff does not seriously press for such a class, nor as indicated above, is one appropriate in view of the Court's earlier ruling that damages are not recoverable in this action.

**12.** FRCP 23(b): "An action *may* be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: [one of three subsections of Rule 23(b) are met]." (Emphasis supplied).

notice and hearing was a violation of due process. The suit, brought under 42 U.S.C. § 1983, was for declaratory and injunctive relief. Over one dissent, the Eighth Circuit concluded that "no useful purpose would be served" by permitting the suit to go forward as a class action. 459 F.2d at 572. The Tenth Circuit adopted the same reasoning in *Martinez* finding that the "same relief could be afforded" without the use of the class action device when only declaratory and injunctive relief are in issue. 472 F.2d at 1127. The *Martinez* court noted however, that a precondition of this holding was that the district court fashion a decree with the issue of future compliance in mind.

■ Relying on *Ihrke, Martinez* and several other cases the Sixth Circuit recently upheld the denial of class certification in a (b)(2) class suit.

"As to a Rule 23(b)(2) class asserting claims to injunctive and declaratory relief, the district court properly recognized that such relief to the extent 'granted [would] . . . accrue to the benefit of others similarly situated' and, consequently, as the Eighth Circuit has recognized, '[n]o useful purpose would be served by permitting this case to proceed as a class action' because '[t]he determination of the constitutional question can be made by the Court and the rules and regulations determined to be constitutional or unconstitutional regardless of whether this action is treated as an individual action or as a class action.'" *Craft v. Memphis Light, Gas and Water Division*, 534 F.2d 684, 686 (6th Cir. 1976). See also *Greene v. City of Memphis*, 535 F.2d 976, fn. 2 (6th Cir. 1976); *United Farmworkers of Florida v. City of Delray Beach*, 493 F.2d 799, 812 (5th Cir. 1974). Thus, the Sixth Circuit appears to have conclusively rejected the view of the Seventh Circuit that class certification is mandatory if the requisites of Rule 23 are met. *Fujishima v. Board of Education*, 460 F.2d 1355, 1360 (7th Cir. 1972). Several district courts have recognized that the Seventh Circuit may have overstated the rule somewhat in *Fujishima*. E. g., *Coffin v. Secre-*

*tary*, 400 F.Supp. 953, 956 (D.D.C.1975), app. filed 45 U.S.L.W. 3375 (U.S. December 23, 1975). Even courts in other circuits which have followed the *Fujishima* rule recognize that absent some unusual factors "suits for determination of the constitutionality of a federal statute or regulation should not be treated as a class action." *Argo v. Hills*, 425 F.Supp. 151, 159 (E.D.N.Y.1977).

■ Therefore, the Court concludes that this action should not proceed as a class action. No significant interest will be advanced by allowing the action to be maintained on behalf of a class. Any relief that plaintiff may be able to prove himself entitled to will inure to the benefit of all those on whose behalf plaintiff asserts an interest.

## IV. MOTION FOR PRELIMINARY INJUNCTION

Plaintiff seeks a preliminary injunction which would in effect prohibit defendants from continuing their present procedure for terminating unemployment compensation benefits and require them to provide a full hearing to beneficiaries prior to the termination of unemployment compensation benefits.

■ In order to secure the carefully husbanded remedy of preliminary injunctive relief, the plaintiff must demonstrate the existence of four prerequisites: (1) a showing of probable success on the merits; (2) irreparable injury; (3) overriding harm to the plaintiff relative to the defendant; and (4) furtherance of the public interest. *Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53*, 520 F.2d 1220 (6th Cir. 1975); *North Avondale Neighborhood Ass'n v. Cincinnati Metro. Housing Authority*, 464 F.2d 486 (6th Cir. 1972); *Merrill Lynch, Pierce, Fenner & Smith v. E. F. Hutton & Co., Inc.*, 403 F.Supp. 336 (E.D. Mich.1975).

■ The Court is satisfied that the first requirement is met. In the landmark case of *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2nd Cir. 1953) the court said:

"To justify temporary injunction it is not necessary that the plaintiff's right to a final decision, after trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation . . ."

206 F.2d at 740. Accord: *Columbia Pictures Industries, Inc. v. American Broadcasting Companies, Inc.*, 501 F.2d 894 (2nd Cir. 1974).

Here, the previous discussion of the motion to dismiss demonstrates that plaintiff has indeed set forth claims which provide "fair ground for litigation." The Court is not persuaded, however, that the remaining elements of the test are satisfied.

■ In ruling upon a motion for preliminary injunction the Court is required to engage in a wide-ranging balancing test familiar to courts of equity. E. g., *Perry v. Perry*, 88 U.S.App.D.C. 337, 190 F.2d 601 (1951). *Metropolitan Detroit Plumbing and Mechanical Contractors Ass'n v. HEW*, 418 F.Supp. 585 (E.D.Mich.1976). The Court has concluded from a review of the record that the injury plaintiff claims is not irreparable. It is uncontested that at some point in the appeals process unemployment compensation applicants receive a full hearing that comports with due process. Thus, the system can and does rectify errors that are made during the initial stages of the process.[13] Thus, the unemployment compensation applicant here is in the same position as the discharged government employee in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) who it was noted

"may well have independent resources to overcome any temporary hardship, and he may be able to secure a job in the private sector. Alternatively, he will be eligible for welfare benefits."

416 U.S. at 169, 94 S.Ct. at 1652 (Powell, J. concurring). See *Mathews v. Eldridge, supra* at 342, 92 S.Ct. 893; *Graves v. Meystrik, supra* at 48.

The effect on the MESC of an injunction would be extensive. Many of the practices of a large administrative agency would have to be changed and personnel either hired or retrained. Such an injunction would surely have a disruptive impact on MESC. The Court cannot conclude that the public interest in orderly conduct of state programs is insignificant. To require the state to revamp its complete program in advance of a finding in plaintiff's favor would impose major costs on a fixed-budget program. Nor does the Court think that the number of persons whose benefits will be terminated between now and the time of a final decision on the merits is likely to outweigh the defendants' and the public's interest in preserving the status quo pending resolution of this controversy.[14] Nor is it certain, as the discussion concerning the motion to dismiss makes clear, that plaintiff will eventually be entitled to all the relief he seeks in the complaint. It is conceivable that in the particular facts of Michigan's program something less than a full-dress pretermination fair hearing may satisfy the requirements of law. To require the defendants to do more than the Constitution or statutes demand before adjudication of the merits, would be highly imprudent. Accordingly, the Court will deny the motion for preliminary injunction.

IT IS SO ORDERED.

---

**13.** Plaintiff himself has elsewhere referred to the large number of reversals in the administrative process. That fact alone undercuts plaintiff's irreparability argument.

**14.** The Court has already ruled that damages may not be recovered in this lawsuit. The named plaintiffs will not themselves be subject to additional future terminations. Moreover, the Court notes that this case should be ready for summary judgment in the not too distant future if the parties can agree upon the relevant facts.