**Mary CURRY and Jessie McIntire, Plaintiffs,**

v.

**John T. DEMPSEY, Director, Michigan Department of Social Services, Respondent-Third Party Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Joseph A. Califano, Jr., Secretary Third Party Defendants.**

**No. K77–200 CA8.**

United States District Court, W. D. Michigan, S. D.

July 22, 1981.

Mary Ellen Drolet, St. Joseph, Mich., for petitioners.

Janis Meija and William K. Basinger, Asst. Attys. Gen., Lansing, Mich., for respondent-third party plaintiff.

Robert C. Greene, U.S. Atty., Grand Rapids, Mich., Randolph W. Gaines, Gwenda D. Jones, Baltimore, Md., for third party defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This action began in a Michigan Circuit Court as a petition by plaintiffs for review of an adverse administrative decision. The Michigan Department of Social Services (DSS) had determined that plaintiffs were not eligible for Aid to Families with Dependent Children (AFDC) because as guardians they were not related to their wards in the manner required by administrative interpretations of the Social Security Act (the Act), 42 U.S.C. § 601 *et seq.* Defendant DSS removed the case to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446. Defendant DSS then filed a third-party complaint against the Secretary of the United States Department of Health, Education and Welfare, now Health and Human Serv-

ices (HHS), because of the joint state and federal funding of AFDC. All parties have moved for summary judgment and plaintiffs have moved for class certification.

There appears to be no genuine issue of material fact which would render a summary judgment inappropriate under Fed.R. Civ.P. 56. The undisputed facts establish that plaintiff McIntire is the legal guardian of Katherine Skorochod by virtue of an order of the Probate Court of Berrien County, Michigan dated August 8, 1975. Plaintiff Curry was the legal custodian of Imogene Moore at the time this case was filed, and has since been appointed her legal guardian by the same Probate Court on May 8, 1980. Both children were born in 1966 and have lived with their present guardians since their first few weeks or months of life. Neither plaintiff is related by blood or marriage to her ward.

Plaintiffs allege that DSS is improperly administering the AFDC program and violating the due process and equal protection clauses of the United States Constitution. Plaintiffs seek a reversal of the administrative decision denying them benefits, and such other relief for themselves and all others similarly situated "as shall be agreeable to equity and good conscience." Defendant DSS asks this Court to declare the rights of the parties, including if necessary the right of DSS to obtain federal financial participation from third-party defendant HHS.

■ A threshold question to be addressed is whether the plaintiffs' claim has become moot. It has come to the attention of this Court that both plaintiffs presently receive benefits under the state General Assistance program in an amount identical to that which they would receive under AFDC. Plaintiffs point out that even if the benefits are identical, there are eligibility and resource requirements that are not the same under the two programs. For example, the limitation on non-exempt resources under the General Assistance program is fifty dollars, while the limitation under AFDC is $1,500. This Court finds that plaintiffs' claim is not moot under such circumstances.

"[T]here is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

■ The AFDC benefits which plaintiffs seek were established by Congress through the Act to provide financial assistance to qualified families. The federal government provides funds to the states for about half the cost of the program. To receive aid, a family must include a dependent child as defined in § 406(a) of the Act, 42 U.S.C. § 606(a):

The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives at his or their own home. . . .

This statutory provision has been interpreted by HHS in its regulations governing the payment of federal funds to the states as follows:

(c) *Federal financial participation.* (1) Federal financial participation under title IV–A of the Social Security Act in payments with respect to a "dependent child," as defined in section 406(a) of the Act, is available within the following interpretations:

. . . .

A child may be considered to meet the requirement of living with one of the relatives specified in the Act if his home is with a parent or a person in one of the following groups:

(1) Any blood relative, including those of half-blood, and including first cousins, nephews, or nieces, and persons of preceding generations as denoted by prefixes or grand, great, or great-great.

(2) Stepfather, stepmother, stepbrother, and stepsister.

(3) Persons who legally adopt a child or his parent as well as the natural and other legally adopted children of such persons, and other relatives of the adoptive parents in accordance with State law.

(4) Spouses of any persons named in the above groups even after the marriage is terminated by death or divorce.

45 C.F.R. § 233.90(c)(v)(A) (1980).

Plaintiffs assert that a needy child living with a duly appointed guardian is entitled to receive AFDC benefits. DSS responds that in excluding guardians as AFDC recipients it is merely complying with the federal requirements as implemented in the state statute, M.C.L.A. § 400.56, and the state regulation, Mich.Ad.Code 1979, Rule 400.-11(12). HHS alleges that its regulation is a valid interpretation of § 406 and that it appropriately effectuates the intent of Congress.

The intent of Congress is best indicated in § 401 of the Act, 42 U.S.C. § 601, providing that the Act is:

> For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living *to help maintain and strengthen family life* and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection. . . . (Emphasis added)

The program's support of family life is the legislative preference to institutionalization: "Through cash grants adjusted to the needs of the family it is possible to keep the young children with their mother in their own home, thus preventing the necessity of placing the children in institutions." S.Rep.No. 628, 74th Cong., 1st Sess., 17 (1935), *quoted in Dandridge v. Williams,* 397 U.S. 471, 495, 90 S.Ct. 1153, 1167, 25 L.Ed.2d 491 (1970).

The group of eligible recipients clearly includes more than just mothers, however. The Act effectuates the purpose of helping to "maintain and strengthen family life" by including various types of relatives as persons who can maintain a residence for a needy child and thereby qualify for aid. Included in this list are stepbrothers and stepsisters, first cousins, nieces, and nephews. It is apparent from this far-reaching approach that the intent of Congress was to provide aid to needy children in many types of family settings where they would be likely to receive the care, affection, and support necessary for their development into productive citizens.

Moreover, HHS has made its own determination that the intent of Congress was to support children in many types of family settings beyond merely the home of the biological parents. Its regulation gives effect to Congressional intent by including additional possible recipients of aid. Thus, great-great uncles, adoptive parents, and even the divorced former spouses of first cousins are considered to meet the requirements of the Act for purposes of federal financial participation. This case presents the question whether court-appointed legal guardians should also be considered as persons who occupy such a relationship to and can be expected to provide such care for needy children that they fall within the intent of Congress to provide funds "to help maintain and strengthen family life."

Plaintiffs were appointed as guardians by a Michigan court and their guardianship role is thus governed by Michigan law. Under the revised Michigan Probate Code, a guardian is, "a person appointed by the [probate] court to exercise full powers of . . . a parent . . . ." M.C.L.A. § 700.6(2) (1979). A person designated a guardian is one whose appointment has been found by the court to be in the best interests of the minor. M.C.L.A. § 700.426. The powers and responsibilities of a guardian are those "of a parent who is not deprived of custody

of the parent's minor and unemancipated child," with certain exceptions. The guardian "shall facilitate the ward's education, social or other activities," and shall report to the court when directed to do so by court order or court rule. M.C.L.A. § 700.431. Finally, a guardian may not terminate the guardianship without the approval of the court. M.C.L.A. § 700.433.

Plaintiffs in this case, in addition to providing homes for their respective wards for a decade and a half, are subject to all the duties and responsibilities of Michigan guardians as outlined above. It is clear that they have been, and can be expected to continue to be, the source of maintenance and strength for the only family life their wards have ever known. They are exactly the types of persons which Congress appears to have had in mind when it decided to provide AFDC benefits "to help maintain and strengthen family life."

In sharp contrast are some of the remote relationships which presently qualify for AFDC benefits. A divorced husband of a great-great aunt who is living with a needy child has no affirmative duties with respect to that child's welfare at all, and yet can be an AFDC recipient under the HHS regulations. Having determined that the intent of Congress to support needy children in family settings required an expansive reading of § 406, HHS then interpreted Congress as wishing to include various other persons. It is the opinion of this Court that the correct interpretation of Congressional intent includes within the group of possible AFDC recipients those legal guardians that have the responsibilities that plaintiffs do under Michigan law.

Defendant DSS and third-party defendant HHS argue that Congress intended that only "relatives" living with needy children qualify as families which should receive aid. Thus, although Congressional intent requires an expansive reading of the Act, any expansion is limited, in their argument, to the inclusion of other relatives, whether by blood or marriage. They rely on cases which have upheld the § 406(a) degree of relationship requirement against general constitutional challenges. *Cheley v. Burson*, 324 F.Supp. 678 (N.D.Ga.1971), *appeal dismissed sub nom. Cheley v. Parnham*, 404 U.S. 878, 92 S.Ct. 219, 30 L.Ed.2d 159 (1971); *Sanchez v. Atencio*, No. 78–A–703 (D.Colo., March 28, 1979). They also point to a Supreme Court statement in *Burns v. Alcala*, 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975), observing that although "[t]he list of relatives has grown, ... there is still no general provision for AFDC payments to needy children living with distant relatives or unrelated persons, or in institutions." 420 U.S. at 582, 95 S.Ct. at 1185.

The quoted authorities are not persuasive. Neither *Cheley* nor *Sanchez* considered the question of whether a person with the status of a legal guardian could· be providing a stable home environment of the type that Congress meant to aid by acting "to maintain and strengthen family life." The *Burns* dicta was simply meant to convey the observation that § 401 of the Act indicated that "Congress had not undertaken to provide support for all needy children." 420 U.S. at 582, n.9, 95 S.Ct. at 1185, n.9.

Moreover, the argument reflects a misplaced emphasis in its interpretation of Congressional intent. A stable and nurturing home environment for needy children is what the Act seeks to support, not merely a living arrangement with someone who happens to share a common ancestor. The relationships specified in the HHS regulation may be reasonable means of assuring an adequate home environment, but so is the type of legal guardianship that plaintiffs have undertaken.

The existence of a separate branch of the AFDC program for foster care (AFDC–F) does not alter . this conclusion. Section 408(a) of the Act, 42 U.S.C. § 608(a), defines "dependent child" for AFDC–F purposes as one who is removed from the home of a relative by judicial determination and placed in a licensed foster home or child-care institution with placement and care being the responsibility of the appropriate state agency. In plaintiffs' cases the beneficial care being provided by plaintiffs for

their wards did not warrant the institution of dependency/neglect proceedings by which DSS would acquire placement and care responsibilities. The least burdensome and most rational avenue was to permanently establish the existing custodial relationships. Thus, plaintiffs do not qualify for AFDC–F benefits and it cannot be argued that Congress intended persons such as plaintiffs to be provided for under the AFDC–F program.

■ As noted earlier, plaintiffs have sought relief for themselves and all others similarly situated. They have failed to present any evidence that would allow a finding as required by Fed.R.Civ.P. 23(a)(1) that "the class is so numerous that joinder of all members is impracticable." On this issue, plaintiffs have the positive burden of proof. *Cash v. Swifton Land Corporation*, 434 F.2d 569 (6th Cir. 1970).

■ While part of this failure may be due to defendant DSS's refusal to cooperate with requested discovery, there is at any rate no useful purpose to be served by class certification in this case. The parties are seeking a declaration of their legal rights and duties. Any declaratory or injunctive relief will accrue to the benefit of others similarly situated whether there is a class or not, so a class action is unnecessary. *Craft v. Memphis Light, Gas and Water Division*, 534 F.2d 684 (6th Cir. 1976), *aff'd on other grounds*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1977); *Drumright v. Padzieski*, 436 F.Supp. 310 (E.D.Mich.1977). There is no reason to assume that the parties will not conform their conduct to any decree of the Court. *Drumright, supra; McCoy v. Weinberger,* 386 F.Supp. 504 (W.D.Ky. 1974). Although a part of plaintiffs' constitutional claims relied on the refusal of DSS and HHS to apply prior state court decisions to similar cases, the circumstances are different here and this Court will assume the parties will abide by its decision. Because of the disposition on statutory grounds, this Court does not reach plaintiffs' constitutional claims.

Accordingly, plaintiffs' motion for class certification is denied. Plaintiffs' motion for summary judgment is granted, and plaintiffs are hereby declared to be eligible for AFDC benefits due to their guardianship status. Defendant DSS is hereby ordered to pay such benefits and third-party defendant HHS is ordered to provide federal financial participation in the payment of such benefits.

IT IS SO ORDERED.